STATE OF CONNECTICUT *v.* ARCHIE COSTA

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 9—decided July 6, 1967

*Richard R. Stewart,* with whom, on the brief, was *F. Lee Bailey,* of the Massachusetts bar, for the appellant (defendant).

*Thomas F. Wall,* state's attorney, for the appellee (state).

HOUSE, J. The defendant, Archie Costa, and his brother Alexander J. Costa were each charged with four counts of forgery and one of conspiracy to obtain money by false pretenses. Both brothers, who retained the same attorney to represent them, pleaded not guilty and were tried together before a jury, and each was convicted on all five counts. Motions to set aside the verdicts were denied. The defendant, now represented by different counsel, alone has appealed. His sole claim on appeal is that he was deprived of the right to the effective aid of trial counsel because that counsel represented both him and his brother.

As in *State* v. *Hunt,* 154 Conn. 517, 523, 227 A.2d 69, "no motion was made at any time . . . for separate counsel. As far as appears the court's attention was never directed to . . . [this] matter, and it was never at any time called upon to exercise its discretion in . . . [this] respect." Although the defendant in his brief claims that, because he was deprived of the right to the effective aid of trial counsel, the trial court erred in denying his motion to set aside the verdict, there is nothing in the

record to show that that claim was ever at any time raised in the trial court, either in connection with that motion or otherwise. Since the trial court was never asked to rule on the claim now advanced by the defendant, under settled Connecticut practice it cannot now be considered. *State* v. *Darwin,* 155 Conn. 124, 142, 230 A.2d 573; see *State* v. *Vars,* 154 Conn. 255, 271, 224 A.2d 744; *State* v. *Annunziato,* 154 Conn. 41, 44, 221 A.2d 57. Since no ruling was made by the trial court, there is nothing to which error now may be assigned. "[T]his policy does not permit a defendant in a criminal case to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on an appeal." *State* v. *Taylor,* 153 Conn. 72, 86, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442; see also Practice Book § 652; *State* v. *Hunt,* supra; *State* v. *Vars,* supra; *State* v. *DeGennaro,* 147 Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95.

This case well illustrates the necessity for the rule (Practice Book § 652) that this court, as an appellate court of review, shall not be bound to consider any errors on an appeal unless it appears on the record that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim, or that it arose subsequent to the trial. Nor does it fall within the limited exception to that rule as required by the holding in *O'Connor* v. *Ohio,* 385 U.S. 92, 93, 87 S. Ct. 252, 17 L. Ed. 2d 189. See *State* v. *Darwin,* supra. Nor is there anything in the record which suggests that the trial court should have acted suo

motu in this case, a claim advanced for the first time during the oral argument on this appeal.

The following facts are not in dispute. The I. T. Kellogg Company and the Bartlett Tree Expert Company were respectively the supervising general contractor and the subcontractor for clearing the Connecticut portion of a right of way which extended 185 miles through New York, Massachusetts and Connecticut. Archie Costa was the steward for the union for Kellogg's employees, and Alexander Costa was the steward for the union for Bartlett's employees. In the usual course of Bartlett's business, a personnel record was prepared by a person applying for employment, and it was countersigned by the supervisor on the Bartlett staff hiring him. What purported to be applications and personnel records of four persons, who were never employees of Bartlett, had been countersigned by Alexander. He also received the payroll checks issued by Bartlett in the names of these four persons. Some of the paychecks made out to these four phantom employees contained endorsements in the name of Alexander Costa, and several were cashed by him but none of the four ever worked for or received any payments for services rendered Bartlett.

The state offered evidence, and claimed to have proved, that some of the forged signatures were written by Archie. Alexander, without changing his plea of not guilty, testified during the trial that he had traced the names which appeared as endorsements on some of the forgeries from an employee list which was in Archie's handwriting. Alexander thereby incriminated himself on the forgery counts but purported to explain the state's evidence against his brother and thus exonerate him.

The claim of the defendant on appeal that he was denied the right to the effective aid of counsel must be considered in the circumstances that his counsel was not appointed by the court. He was selected by the defendant to represent him with full knowledge that the same attorney also represented his brother Alexander. That attorney's competence is unquestioned. Indeed, in his brief on this appeal, through his new counsel, the defendant disclaims any "purpose—express or implicit—to impugn in any manner able trial counsel."

The defendant's claim has two bases. The first basis is "that under no circumstances can one attorney jointly represent two defendants who must stand trial together, one of whom is innocent and the other guilty." Absent some showing of prejudice, however, the mere fact that codefendants have been represented jointly by the same attorney is insufficient, without more, to require a new trial. *Glasser* v. *United States,* 315 U.S. 60, 77, 62 S. Ct. 457, 86 L. Ed. 680; *United States* v. *Berriel,* 371 F.2d 587 (6th Cir.); *United States* v. *Paz-Sierra,* 367 F.2d 930, 932 (6th Cir.); *United States* v. *Bentvena,* 319 F.2d 916, 937 (2d Cir.); *Mohler* v. *United States,* 312 F.2d 228, 230 (7th Cir.), cert. denied, 374 U.S. 854, 83 S. Ct. 1922, 10 L. Ed. 2d 1074; *Draper* v. *Rhay,* 242 F. Sup. 829, 832 (E.D. Wash.), aff'd, 358 F.2d 304 (9th Cir.), cert. denied, 384 U.S. 993, 86 S. Ct. 1901, 16 L. Ed. 2d 1009; *State* v. *Hunt,* 154 Conn. 517, 524, 227 A.2d 69.

The second basis of the defendant's claim clearly demonstrates the need for raising the claim in the trial court in the first instance in order that there be an adequate record for appellate review. The claim (made with all the wisdom of hindsight) appears to be predicated on a criticism of the trial

strategy of original counsel and on a purely speculative conjecture directed to the question of prejudice. It is advanced in the appeal brief in these words: "Although it may well be that it was defense strategy from the outset of the trial to allow Alexander to hang himself for Archie's benefit, the jury could not have known this. They may have concluded from Alexander's plea of innocence that he intended to escape conviction if he could, and only after he had heard the State's case decided to testify as he did." With nothing in the record to support such a conjecture, we are apparently invited to speculate (1) that had Archie been tried at a time after his brother, for some reason, had chosen to concede his guilt, he would have benefited more from his brother's self-incrimination than he in fact did and (2) that the fact that Archie did not receive this supposed benefit is traceable to both brothers' election to be represented by the same counsel, which the court, suo motu, should have intervened to prevent. An appellate court ought not to be expected to determine the merits of such speculative imaginings. *State* v. *Johnson*, 139 Conn. 89, 93, 90 A.2d 905.

Nothing in the record even suggests that the interests of the two brothers were antagonistic. From all that appears the tactics of trial counsel were "a considered and sound exercise of trial strategy calculated to be in the best interests of each accused." *State* v. *Hunt*, 154 Conn. 517, 524, 227 A.2d 69. "And certainly, trial strategy, even if it proves unsuccessful, is inadequate basis for an attack on the competence of counsel." *United States* v. *Duhart*, 269 F.2d 113, 115 (2d Cir.).

"The record discloses no conflict of interest between [the] defendants, and the appeal points to

no substantial prejudice that came to either defendant because of the single attorney's conduct of the defense." *United States* v. *Berriel,* 371 F.2d 587 (6th Cir.). The defendant was afforded every protection which our law gives to any person charged with a crime.

There is no error.

In this opinion the other judges concurred.